UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| FAIRFIELD SENTRY LIMITED, et al., | Case No. 10-13164 (CGM) |
| Debtor in Foreign Proceedings. | Jointly Administered |
| FAIRFIELD SENTRY LTD. (IN LIQUIDATION), et al., | Adv. Pro. No. 10-03626 (CGM) |
| Plaintiffs, | |
| v. | |
| BGL BNP PARIBAS SA, ET AL., | |
| Defendants. | |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Date: April 28, 2023

SELENDY GAY ELSBERG PLLC

David Elsberg
Maria Ginzburg
Jordan Goldstein
Lena Konanova
David S. Flugman
Joshua S. Margolin
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000

-and-

BROWN RUDNICK LLP

David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800

## <u>TABLE OF CONTENTS</u>

<u>Pages</u>

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................4

    A.    The Funds.........................................................................................................4

    B.    BGL BNP's Spoliation Of ESI Reflecting Jurisdictional Contacts And The
Court's Adverse Inference ................................................................................5

    C.    BGL BNP's Investment In The Funds................................................................6

STANDARD...............................................................................................................................10

ARGUMENT .............................................................................................................................12

I.    BGL BNP Has Sufficient Minimum Contacts With The United States ............................12

    A.    BGL BNP Knowingly And Intentionally Invested In Madoff Feeder Funds........13

        1.    BGL BNP Purposefully Availed Itself Of The United States Via Its
Intentional Investment In The Funds .........................................................14

        2.    BGL BNP's Intentional Investment In The Funds Directly Relates
To The Liquidators' Claims.....................................................................21

    B.    BGL BNP Engaged In Other Business Activity In And Directed At The
United States ...................................................................................................22

        1.    Evidence Indicates BGL BNP Engaged In Business Activity In
And Directed At The United States ...........................................................23

        2.    The Court Should Infer That More Extensive Evidence Of U.S.
Business Activity Once Existed And Has Been Destroyed ......................24

    C.    BGL BNP ███████████████████ To Invest In And
Receive Redemption Payments From Sentry ........................................................25

        1.    BGL BNP Deliberately ███████████████ ...............26

        2.    BGL BNP ████████████████████████
███████████ ...................................................................31

        3.    BGL BNP's ███████████ Was Sufficiently Related
To The Harms Alleged...............................................................................33

i

D.      The Court May Exercise Jurisdiction Over BGL BNP Even If The
        Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe
        Harbor Analysis .................................................................................................33

II.     The Exercise Of Jurisdiction Over BGL BNP Is Reasonable.............................................35

CONCLUSION.................................................................................................................40

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
   677 F.3d 60 (2d Cir. 2012) ...................................................................................34

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
   98 F.3d 25 (2d Cir. 1996) .....................................................................................24

*In re Ampal-Am. Israel Corp.*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017) ..................................................................34

*In re Arcapita Bank B.S.C.(C)*,
   2022 WL 1620307 (S.D.N.Y. May 23, 2022) .......................................................29

*Averbach v. Cairo Amman Bank*,
   2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ..........................................................32

*In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"),
   2023 WL 395225 (S.D.N.Y. Jan. 25, 2023) .................................................. *passim*

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
   137 S. Ct. 1773 (2017) ....................................................................................39, 40

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .........................................................................................12, 22

*Cunningham v. Gen. Motors LLC*,
   2021 WL 827124 (S.D.N.Y. Mar. 4, 2021) .......................................................36, 40

*Drake v. Lab. Corp. of Am. Holdings*,
   2008 WL 4239844 (E.D.N.Y. Sept. 11, 2008) ......................................................11

*In re Eur. Gov't Bonds Antitrust Litig.*,
   2020 WL 4273811 (S.D.N.Y. July 23, 2020) .......................................................22

*In re Fairfield Sentry Ltd.*,
   2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ...............................21, 22, 23

*In re Fairfield Sentry Ltd.*,
   596 B.R. 275 (Bankr. S.D.N.Y. 2018) ............................................................25, 30

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021) ....................................................................................39, 40

*Gucci Am., Inc. v. Weixing Li*,
   135 F. Supp. 3d 87 (S.D.N.Y. 2015) .....................................................................38

*Hau Yin To—Tamam v. Fransabank SAL*,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)............................................................30, 31

*Hau Yin To v. HSBC Holdings PLC*,
    2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) ....................................................29, 30

*Hill v. HSBC Bank PLC*,
    207 F. Supp. 3d 333 (S.D.N.Y. 2016)............................................................29, 30

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001)....................................................................................39

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873 (2011)..............................................................................................20

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"),
    673 F.3d 50 (2d Cir. 2012)......................................................................................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"),
    732 F.3d 161 (2d Cir. 2013).......................................................................... *passim*

*Loginovskaya v. Batrachenko*,
    764 F.3d 266 (2d Cir. 2014)..................................................................................35

*In re Madoff Sec.*,
    513 B.R. 222 (S.D.N.Y. 2014)..............................................................................35

*Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*,
    12 N.E.3d 456 (N.Y. 2014)...................................................................................32

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
    295 F. Supp. 3d 404 (S.D.N.Y. 2017)..................................................................11

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).......................................................................10, 11, 35

*In re Motors Liquidation Co.*,
    565 B.R. 275 (Bankr. S.D.N.Y. 2017)..................................................................23

*MSP Recovery Claims, Series LLC v. Takeda Pharm. Am. Inc.*,
    2021 WL 4461773 (S.D.N.Y. Sept. 29, 2021)......................................................13

*Nike, Inc. v. Wu*,
    349 F. Supp. 3d 310 (S.D.N.Y. 2018)..................................................................38

*Obabueki v. Int'l Bus. Machines Corp.*,
    2001 WL 921172 (S.D.N.Y. Aug. 14, 2001)........................................................11

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*,
    549 B.R. 56 (S.D.N.Y. 2016).....................................................................27, 29, 32

*Picard v. ASB Bank Corp.* (*In re Madoff*),
    2022 WL 17087667 (Bankr. S.D.N.Y. Nov. 18, 2022) ..........................................24

*Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"),
    2022 WL 2387523 (Bankr. S.D.N.Y. June 30, 2022).................................... *passim*

*Picard v. BNP Paribas S.A.* (*In re Bernard L. Madoff*),
    12-ap-01576 (CGM) (Bankr. SDNY) ..................................................................39

*Picard v. BNP Paribas S.A.* (*In re Bernard L. Madoff*),
    594 B.R. 167 (Bankr. S.D.N.Y. 2018)..................................................................33

*Picard v. Bureau of Lab. Ins.*,
    2016 WL 6900689 (Bankr. S.D.N.Y. Nov. 22, 2016) ............................................34

*Picard v. Bureau of Lab. Ins.* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"),
    480 B.R. 501 (Bankr. S.D.N.Y. 2012)................................................. *passim*

*Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"),
    2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022) .................................... *passim*

*Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*) ("*FGG*"),
    627 B.R. 546 (Bankr. S.D.N.Y. 2021).............................................................12, 33

*Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*),
    2014 WL 5106909 (Bankr. S.D.N.Y. Oct. 10, 2014) ............................................15

*Picard v. LGT Bank in Liechtenstein Ltd.* (*In re Madoff*),
    2023 WL 2003960 (Bankr. S.D.N.Y. Feb. 14, 2023)............................................24

*Picard v. Maxam Absolute Return Fund, L.P.*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011).............................................................12, 15

*Picard v. Meritz Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*),
    2022 WL 3273044 (Bankr. S.D.N.Y. Aug. 10, 2022) ...........................................26

*Picard v. Parson Finance Panama S.A.* (*In re Bernard L. Madoff*),
    2022 WL 3094092 (Bankr. S.D.N.Y. Aug. 3, 2022) .............................................17

*In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*,
    917 F.3d 85 (2d Cir. 2019)................................................................................15, 34

*In re Platinum & Palladium Antitrust Litig.*,
    449 F. Supp. 3d 290 (S.D.N.Y. 2020).....................................................................22

*Ralph Lauren Corp. v. CSR Grp., Inc.*,
  2016 WL 4919961 (S.D.N.Y. Sept. 14, 2016)........................................................24

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016)..................................................................................................34

*Rushaid v. Pictet & Cie*,
  28 N.Y.3d 316 (2016) ...............................................................................................29

*Schansman v. Sberbank of Russia PJSC*,
  2021 WL 4482172 (S.D.N.Y. Sept. 30, 2021)................................................31, 32

*Strauss v. Credit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) ..........................................................................36

*Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*,
  2022 WL 36489 (S.D.N.Y. Jan. 4, 2022) .................................................................13

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004)..................................................................................23, 34

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019)........................................................................12, 35, 36

*Universal Trading & Inv. Co., Inc. v. Tymoshenko*,
  2012 WL 6186471 (S.D.N.Y. 2012).................................................................32, 33

*Walden v. Fiore*,
  571 U.S. 277 (2014).............................................................................................19, 20

**Statutes**

Federal Rule of Bankruptcy Procedure 7004..............................................................12

Federal Rule of Bankruptcy Procedure 7012................................................................1

Federal Rule of Civil Procedure 12(b)(2) .....................................................................1

Federal Rule of Civil Procedure 30(b)(6) .....................................................................5

Federal Rule of Civil Procedure 34(a) ..........................................................................5

Federal Rule of Civil Procedure 37(e) ..........................................................................6

**Other Authorities**

*Incidental*, Black's Law Dictionary (11th ed. 2019) ..................................................30

Jason Szep, *Savings Lost to Madoff, Elderly Forced Back to Work*, Reuters (Feb. 6, 2009) ....................................................................................................................................1

Kenneth M. Krys and Greig Mitchell (the "Liquidators"), in their capacities as the duly appointed Liquidators and Foreign Representatives of Fairfield Sentry Limited (In Liquidation) ("Sentry") and Fairfield Sigma Limited (In Liquidation) ("Sigma" and, together with Sentry, the "Funds") in the above-captioned adversary proceeding (together, with the other adversary proceedings now pending against the Funds' former shareholders, the "U.S. Redeemer Actions"), respectfully submit this memorandum of law in opposition to Defendant BGL BNP Paribas SA's (f/k/a/ BNP Paribas Luxembourg SA) ("BGL BNP") motion to dismiss the Fourth Amended Complaint ("Complaint" or "Compl.") (Dkt. 92)[1] under Federal Rule of Civil Procedure 12(b)(2) as made applicable here by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Motion" or "Mot.") (Dkt. 111).

## PRELIMINARY STATEMENT

The Liquidators seek to recover at least $1,838,245.32[2] in payments that BGL BNP[3] received as redemptions of its investment in Bernie Madoff's Ponzi scheme on behalf of its clients. Several Fairfield investors saw their life savings, retirement funds, and pensions wiped out in an instant when the scheme collapsed in December 2008.[4] But as a sophisticated entity with inside

---

[1] Unless otherwise specified, docket citations refer to filings in the above-captioned action.

[2] BGL BNP received $563,808.77 from Sentry and €▮▮▮▮▮ from Sigma through the redemption payments at issue. For purposes of this brief, the Liquidators have applied the exchange rate as of the date of each redemption payment out of Sigma and calculated the dollar value of the Sigma redemptions to be approximately $1,274,436.55. This number may vary if the Court ultimately determines that a different exchange rate applies.

[3] During the relevant period, the entity now known as BGL BNP was operating as BNP Paribas Luxembourg or "BNPPL." See Dkt. 163-1 (the Liquidators' Memorandum of Law in Support of Motion for Sanctions) at 4-5 (describing relevant series of corporate transactions).

[4] See generally Jason Szep, Savings Lost to Madoff, Elderly Forced Back to Work, Reuters (Feb. 6, 2009), https://www.reuters.com/article/us-madoff-victims/savings-lost-to-madoff-elderly-forced-back-to-work-idUSTRE5156FB20090207.

knowledge about Madoff's fraud, BGL BNP was able to get out early and reap profits for itself and its clients before Madoff's investment firm was put into bankruptcy. BGL BNP now attempts to evade responsibility by minimizing its own substantial and purposeful connections with the United States. BGL BNP should be held to account and its motion to dismiss denied.

The facts relevant to this motion are simple. When BGL BNP withdrew its investments from two Fairfield Funds, it received inflated redemption payments that were substantially sourced from investors' monies that Fairfield had invested in Madoff's eponymous New York investment firm, Bernard L. Madoff Securities LLC ("BLMIS"), through which Madoff operated his Ponzi scheme. Both to make its investments in and, at the expense of other investors, to receive redemption payments from the Funds—the same redemption payments the Liquidators seek to recover in this action—BGL BNP deliberately and repeatedly ███████████████. BGL BNP knew where its investments were going: ████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████.

For the Court to exercise specific jurisdiction over a defendant, the defendant must have sufficient contacts with the forum that relate to the claims at issue, and the exercise of jurisdiction must be reasonable. The evidence that the Liquidators have been able to obtain demonstrates that BGL BNP:

- Subscribed for at least 18,334.16 shares in Sentry and Sigma for $███████[5] with the sole purpose of investing in U.S.-based BLMIS and primarily after reviewing

[5] The value of BGL BNP's Sigma subscriptions is calculated as discussed above, *see supra* n.2, and is subject to the same caveat discussed therein.

private placement memoranda ("PPMs") communicating that its investment would be placed with BLMIS;[6]

- Utilized [7] on at least ███ occasions to ███████████ stemming from those investments;[8] and,

- Signed at least ███ subscription agreements that subjected BGL BNP to the laws of New York and to litigation in New York courts.

The Court, however, is not limited to considering just the facts evident from the limited discovery BGL BNP was able to produce or that the Liquidators have been able to obtain from third parties. As this Court held in its March 17, 2023 Order Granting the Joint Liquidators' Motion for Sanctions, Dkt. 167 (the "Spoliation Order"), BGL BNP intentionally spoliated evidence bearing directly on the question of personal jurisdiction. Pursuant to that finding, this Court can and should conclude that additional documentary evidence once existed and that that evidence would have shown that BGL BNP engaged in extensive, intentional contacts with the United States in connection with its subscriptions in and redemptions from the Funds.

The existing evidence, together with that adverse inference, is plainly sufficient to support the exercise of personal jurisdiction. Indeed, this Court recently held as much with respect to similar investments in the Funds in actions brought by the BLMIS Trustee.[9] And these contacts

---

[6] Throughout this brief, the Liquidators refer to BGL BNP's "investment" with BLMIS. The Liquidators do not allege that the BGL BNP was directly invested in BLMIS, but instead refer to the BGL BNP's investment in BLMIS by way of the Funds.

[7] "Correspondent accounts are accounts in domestic banks held in the name of foreign financial institutions" that are used "to effect dollar transactions." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci II*"), 673 F.3d 50, 56 n.3 (2d Cir. 2012) (cleaned up).

[8] While BGL BNP relied on a ███████████████████ for at least $██████ in redemptions, it ultimately redeemed over $1,838,245.32 from the Funds.

[9] *See, e.g., Picard v. Banque Lombard Odier & Cie SA* (*In re Bernard L. Madoff*) ("*Lombard Odier I*"), 2022 WL 2387523, at *3 (Bankr. S.D.N.Y. June 30, 2022), *leave to appeal denied sub*

3

directly relate to the crux of the Liquidators' claims that BGL BNP redeemed its Fund shares knowing that the payments it would receive in return would be inflated due to inaccurate and fraudulent value statements. Without these U.S. contacts, there would have been no investment, no redemptions, and no benefit to BGL BNP. The factual nexus between BGL BNP's forum contacts and the Liquidators' claims more than sufficiently supports the exercise of specific personal jurisdiction.

This Court's exercise of personal jurisdiction over BGL BNP is also more than reasonable, and allowing the suit to proceed is consistent with notions of fair play and substantial justice. The United States has a substantial interest in this dispute, as it concerns BGL BNP's deliberate choice to invest ███████████████, and wrongfully profit from, a fraudulent scheme in the U.S. securities market and ██████████████████ at the expense of other investors. Any burden BGL BNP faces as a litigant in this forum is minimal at best and can be mitigated through electronic transmission of document productions and redactions to address asserted privacy concerns arising from foreign law. BGL BNP has not come close to meeting its burden of presenting a compelling case that exercising jurisdiction would be unreasonable.

This Court should deny BGL BNP's Motion and reach the merits of the Liquidators' claims.

## **BACKGROUND**

### A.    The Funds

Sentry and Sigma—along with non-party, Fairfield Lambda—were collectively the largest BLMIS "feeder funds," funneling billions of dollars into New York-based BLMIS over 18 years.

---

*nom. In re Bernard L. Madoff Investment Securities LLC* ("*Lombard Odier II*"), 2023 WL 395225 (S.D.N.Y. Jan. 25, 2023); *Picard v. Cathay Life Ins. Co.* (*In re Bernard L. Madoff*) ("*Cathay Life Ins.*"), 2022 WL 16626325 (Bankr. S.D.N.Y. Nov. 1, 2022).

Compl. ¶¶ 6, 38-39. From their inception in 1990 until the widespread disclosure of Madoff's fraud in December 2008, the Funds sought out new investments through the sale of shares and transferred substantially all net proceeds to their New York accounts, which were managed by BLMIS. *Id.* ¶¶ 5, 26-27. Sentry transferred its proceeds directly to BLMIS in New York, while Sigma, established for Euro-denominated investments, transferred proceeds to Sentry. *Id.* ¶¶ 5, 38.

**B.    BGL BNP's Spoliation Of ESI Reflecting Jurisdictional Contacts And The Court's Adverse Inference**

While existing transactional records paint a partial picture of BGL BNP's activities related to its investments in Sentry and Sigma, this Court has held that BGL BNP destroyed evidence that "would have would have been favorable to the Liquidators in establishing personal jurisdiction over [BGL BNP]." Spoliation Order ¶ 3.

On August 5, 2021, this Court lifted the stay and opened discovery in this action. Dkt. 90. Over the following year, the Liquidators sought discovery from BGL BNP, including electronically stored information ("ESI")[10] that would be relevant to the jurisdictional inquiry before the Court. Despite the fact that the Liquidators knew from third parties that individuals at BGL BNP had used email to communicate about the Funds, BGL BNP neither produced nor could even identify any relevant ESI whatsoever in its possession, custody, or control from the relevant time period. The Liquidators took a Rule 30(b)(6) deposition and submitted spoliation briefing in light of BGL BNP's inability to produce or identify relevant ESI. *See* Dkt. 163-1 (Memorandum of Law in Support of Motion for Sanctions); Dkt. 165-1 (Reply in Further Support of Motions for Sanctions). This briefing demonstrated that BGL BNP deleted, or destroyed, all relevant ESI for

---

[10] "ESI" should encompass "any type of information that is stored electronically … such as email … [and] all current types of computer-based information." Fed. R. Civ. P. 34(a) advisory committee's note to 2006 amendment.

the 35 custodians it had identified as most likely to have relevant information, including employees working in wealth management, relationship management, securities handling, and risk roles. *See id.*; Ex. 1 (Pseudonymized List of Litigation Hold Recipients).[11]

After briefing and argument, the Court concluded that "(i) [BGL BNP] spoliated evidence in violation of Federal Rule of Civil Procedure 37(e) […]; (ii) [BGL BNP] acted with intent in doing so; and (iii) such spoliation has prejudiced the Liquidators." Spoliation Order; *see also* Dkt. 168 at 104:9-108:20, 115:14-123:10 (March 15, 2023 Hr'g Tr.). To remedy BGL BNP's spoliation, the Court entered an adverse inference against BGL BNP "that any spoliated evidence would have been favorable to the Liquidators in establishing personal jurisdiction over Defendant." Spoliation Order ¶ 3. Accordingly, the Court will infer that BGL BNP generated ESI—such as emails and their attachments, word processing documents, spreadsheets, instant messages, or voicemails—and that this ESI would have reflected activities relevant to the exercise of personal jurisdiction over BGL BNP.[12]

### C.    BGL BNP's Investment In The Funds

BGL BNP invested in two Fairfield feeder funds—Sentry and Sigma—no later than 2005. *See* Compl. ¶ 22. This was the beginning of BGL BNP's serial investments in the Funds. From

---

[11] Unless indicated otherwise, all exhibits refer to those attached to the Declaration of David S. Flugman ("Flugman Decl.").

[12] Further to the Spoliation Order, BGL BNP is also precluded from asserting that:

"a. It did not communicate internally or externally about its investments in the Funds via email, including but not limited to (i) communications regarding its use of correspondent accounts and (ii) communications with U.S.-based entities or individuals;

b. Such communications did not include diligence on the Funds, the Funds' investment strategy, and/or Bernard L. Madoff Investment Securities LLC; and

c. Such communications are limited to the volume or frequency that the Liquidators can demonstrate by use of evidence produced by third parties[.]"

January 25, 2005, through April 30, 2008 (the "Subscription Period"), BGL BNP entered into at

least 11 individual subscription agreements with Sentry and Sigma for a total of approximately

18,334.16 shares between the two Funds. *Id.*; *see, e.g.*, Exs. 2-7.

BGL BNP knew where the money was going. Evidence obtained from third parties

confirms that BGL BNP ██████████████████████████████████████████████

███████████████████████████ (███████████████████████████████████████

██████████████████████████).[13]

████████, prepared by FGG, ████████████████████████████████████████

███████████████████████████ "██████████████████████████████████████

███████████." Ex. 8 at -606. It also made clear that ███████████ "█████████████

████████████" and that ██████████████████████████████████████████████

██████████████████████████████████████████. Ex. 8 at -604. In

other words, the ██████████████████████████████████████████████████

███████████████████████████. *E.g.*, Ex. 8 at -591 (████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████).

BGL BNP invested in the Funds by signing a "long form" subscription agreement specific

to each Fund prior to its initial subscription. This form required BGL BNP to ███████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████. *E.g.*, Ex. 2 ¶ 7 (Sentry Long Form Subscription Agreement); Ex. 5 ¶ 7 (Sigma Long Form

---

[13] While this ███████████████████████████████████████████, consistent with the
Spoliation Order, the Court should infer BGL BNP would have received a PPM with the same or
similar information prior to its first subscriptions in the Funds.

Subscription Agreement).[14] ████████████████████████████████████████

███████████████████████████████████████████████. *E.g.*, Exs. 6-7

(Sigma Short Form Subscription Agreements).

In addition to the evidence the Liquidators were able to obtain from third parties, the Court

can infer that the evidence that BGL BNP destroyed would have included jurisdictionally relevant

information. Spoliation Order ¶ 3. For example, the Court should infer that because BGL BNP

███████████████████████████████████████ "██████████████████████

███████████████" for Sigma, BGL BNP did in fact ████████████████████

██████████████. *See* Ex. 27 (Sample Sigma PPM).

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.

*E.g.*, Ex. 8 at -602 (██████████████████████████████████████

████████████████████████████████); *see also* Ex. 2 at -015-016 (long-

form subscription agreement provisions mandating that "████████████████████

██████████████████████████████████████"). Knowing that investing

in Sentry would require ███████████████████████, BGL BNP nonetheless chose

to invest in Sentry.

The long form subscription agreements and subscription request forms required BGL BNP

to ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[14] The long form subscription agreements included provisions designating New York law as the governing law and New York as the venue for dispute resolution. Ex. 2 ¶¶ 16, 19; Ex. 5 ¶¶ 17, 20; *see also* Compl. ¶ 23 (alleging that BGL BNP agreed to submit to the jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma).

███████. BGL BNP was free ████████████████████████████████████, *see* Declaration of

Sara Joyce ("<u>Joyce Decl.</u>") at 6-9, 11-13, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████. *E.g.,* Ex. 4 at -521.[15]

When it came time for BGL BNP to redeem its Sentry shares, BGL BNP initiated that

process by ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████, BGL BNP was free

to ████████████████████████████████. *See* Joyce Decl. at 6-9, 11-13. But for each

redemption, BGL BNP ████████████████████████████████████████████████

████████████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[15] BGL BNP does not suggest in its Motion that anyone other than BGL BNP retained discretion
over what account to use for these purposes.

Ex. 9 at -555 (Sentry Redemption Request) (annotation added). Sentry then processed BGL BNP's

redemption requests █████████████████, and BGL BNP predominately received Sentry

redemption payments ██████████████████████████████:



*E.g.,* Ex. 10 (Sentry Redemption Wire Transfer Request) (annotation added). And in one instance,

BGL BNP ████████████████████████████████████. *See* Ex. 31.

From June 17, 2004 through November 21, 2008 (the "<u>Redemption Period</u>"), BGL BNP

███████████████████ 14 redemptions, and BGL BNP took payments totaling

$1,838,245.32. Compl. ¶ 45; *see* Exs. 9-26 (BGL BNP redemption requests, orders, and

confirmations in both Sentry and Sigma). Of these, Sentry ██████████████████

███████—roughly █████████████████████████████████

████████████████—to ████████████████████, as BGL BNP

██████████████████████. Compl. ¶ 45 & Ex. A.

## <u>STANDARD</u>

Courts in this Circuit apply one of three standards to Rule 12(b)(2) motions. If the motion

is assessed solely on the pleadings, the plaintiff may defeat the motion based on legally sufficient

allegations alone. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566-67 (2d Cir.

1996), *cert. denied*, 519 U.S. 1007 (1996). If discovery is permitted *and* the court holds an

evidentiary hearing, "the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence." *Id.* at 567. And where, as here, the court assesses the motion after jurisdictional discovery but *without* holding an evidentiary hearing, the plaintiff need only make a factually supported *prima facie* showing of jurisdiction. *See id.* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Obabueki v. Int'l Bus. Machines Corp.*, 2001 WL 921172, at *2 (S.D.N.Y. Aug. 14, 2001).

In this context, the court must credit the facts averred in the pleadings and motion papers as true and must "construe[] the pleadings and affidavits in the light most favorable to the plaintiff … resolv[ing] all doubts in plaintiff's favor, notwithstanding any 'controverting presentation by the moving party.'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85-86 (2d Cir. 2013)); *accord Drake v. Lab. Corp. of Am. Holdings*, 2008 WL 4239844, at *1 (E.D.N.Y. Sept. 11, 2008) ("Despite this higher burden, the Court must 'credit [Plaintiff's] averments of jurisdictional facts as true.'" (quoting *Metro. Life Ins. Co.*, 84 F.3d at 567)). Likewise, the court must draw "reasonable inference[s]" in the plaintiff's favor based on facts developed in discovery. *Drake*, 2008 WL 4239844, at *5; *see also Obabueki*, 2001 WL 921172, at *1 (stating that the court must draw reasonable inferences in the plaintiff's favor notwithstanding the fact that the parties had engaged in jurisdictional discovery).[16] BGL BNP has not argued otherwise.

---

[16] The Liquidators have not pursued discovery on the merits from BGL BNP, including, for example, documents demonstrating that BGL BNP knew the Funds' net asset values were inflated. To the extent the Court considers those allegations in resolving BGL BNP's Rule 12(b)(2) motion, it should credit those allegations as true per the standard applicable in the absence of jurisdictional discovery. *See Metro. Life Ins. Co.*, 84 F.3d at 566-67.

## **ARGUMENT**

This Court has personal jurisdiction over BGL BNP because BGL BNP has sufficient minimum contacts with the United States and because the exercise of jurisdiction over BGL BNP is reasonable.

## I.     **BGL BNP Has Sufficient Minimum Contacts With The United States**

BGL BNP has sufficient minimum contacts with the United States to permit this Court to exercise jurisdiction over it. Jurisdiction under Bankruptcy Rule 7004 is assessed based upon the defendant's "contacts with the United States, rather than with the forum state," and there is no need for the Court to address the forum state's long-arm statute. *Picard v. Fairfield Greenwich Grp. (In re Fairfield Sentry Ltd.)* ("*FGG*"), 627 B.R. 546, 565 nn.12, 13 (Bankr. S.D.N.Y. 2021) (citing *In re Lehman Bros. Holdings Inc.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015)). Demonstrating the requisite minimum contacts for specific personal jurisdiction requires showing (1) a defendant's "purposeful availment" of the forum (2) that "arises out of or relates to" the alleged misconduct. *FGG*, 627 B.R. at 566; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985); *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785-86 (2017)). Courts assess both prongs based on the "totality of the circumstances." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* ("*Licci IV*"), 732 F.3d 161, 170 (2d Cir. 2013).

Satisfying the first prong, "purposeful availment," requires showing that the defendant has sufficient contacts with the forum resulting from the defendant's own actions. *FGG*, 627 B.R. at 566. The defendant's activities "need not have taken place within the forum, and a single transaction with the forum will suffice." *Picard v. Maxam Absolute Return Fund, L.P.*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (cleaned up) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

12

Satisfying the second prong, "arises out of or relates to," requires showing that there is a "sufficiently close link" between the defendant's contacts and the claims at issue. *MSP Recovery Claims, Series LLC v. Takeda Pharm. Am. Inc.*, 2021 WL 4461773, at *3 (S.D.N.Y. Sept. 29, 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1032 (2021)). A causal relationship between the plaintiff's claims and the defendant's forum contacts is *not* required. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325, at *4 (citing *Ford Motor Co.*, 141 S. Ct. at 1027). An "affiliation between the forum and the underlying controversy" is sufficient. *Id.* (quoting *Goodyear Dunlap Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Suez Water N.Y. Inc. v. E.I. Du Pont Nemours Co.*, 2022 WL 36489, at *8 (S.D.N.Y. Jan. 4, 2022) (holding that the claims must be "arguably connected" to, rather than "completely unmoored" from, the contacts at issue (quoting *Licci v. Lebanese Canadian Bank, SAL* ("*Licci III*"), 984 N.E.2d 893, 900-01 (N.Y. 2012))).

The facts averred and evidence presented by the Liquidators, which must be taken as true for purposes of this motion, are sufficient to satisfy both prongs of the minimum contacts test. BGL BNP purposefully availed itself of the United States by intentionally investing in BLMIS feeder funds Sentry and Sigma with the express intention of profiting from BLMIS's investments in the U.S. securities market (**Section I.A**, *infra*), engaging in other business activity within and aimed at the United States (**Section I.B**, *infra*), and repeatedly ███████████████████ ████████████████████████████████████████████ ██████████████████ (**Section I.C**, *infra*). Each of those contacts is closely related to the Liquidators' claims. BGL BNP therefore has sufficient minimum contacts with the United States.

### A.    BGL BNP Knowingly And Intentionally Invested In Madoff Feeder Funds

The facts averred and evidence presented by the Liquidators make clear that BGL BNP intentionally invested in BLMIS feeder funds Sentry and Sigma knowing that the Funds were

designed to subsequently invest that money in New York-based BLMIS. BGL BNP is subject to this Court's jurisdiction with respect to its Sentry and Sigma redemptions as a result of that conduct.

### 1.    BGL BNP Purposefully Availed Itself Of The United States Via Its Intentional Investment In The Funds

This Court, applying Judge Lifland's decision in *Picard v. Bureau of Labor Insurance* (*SIPC v. Bernard L. Madoff Inv. Sec. LLC*) ("*BLI*"), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012), recently held that "[a] party 'purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS.'" *Cathay Life Ins.*, 2022 WL 16626325, at *3. *BLI* applies with at least equal force here.

In *BLI*, Judge Lifland held—in a very similar action seeking to reclaim redemption payments made by the same Fairfield Sentry fund—that a foreign defendant "purposefully availed itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." 480 B.R. at 517. ████, the *BLI* defendant subscribed in Sentry after reviewing "a private placement memorandum and other information about Fairfield Sentry, including specifics about the Fund's investment strategy and past results and trades in the S & P 100," provided to it by FGG. *Id.* at 517. And, ████, the defendant "signed [a] Subscription Agreement [that] incorporated the [offering memorandum]," meaning the defendant knew "Sentry was required to invest at least 95% of its assets" in BLMIS, *see* Ex. 8 at -598, which would hold the assets in accounts in New York to be "invested in U.S. Securities…." *Id.*

Since *BLI* was decided, courts repeatedly have employed *BLI*'s reasoning to find jurisdiction in similar circumstances. *See, e.g.*, *Picard v. JP Morgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 2014 WL 5106909, at*9 (Bankr. S.D.N.Y. Oct. 10, 2014) (noting that *BLI* "confirmed that defendants who invested directly or indirectly with BLMIS and received payments from BLMIS as initial transferees or as subsequent transferees of those initial transferees [are] subject to the Court's personal jurisdiction"); *Maxam Absolute Return Fund, L.P.*, 460 B.R. at 118 (finding jurisdiction over defendant that "engaged in a series of repeated transactions that intentionally channeled investor money into the BLMIS Ponzi scheme in New York"); *cf. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 105 (2d Cir. 2019) ("When these investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going.").

Most recently, this Court cited *BLI* in exercising personal jurisdiction over several defendants in actions brought by the BLMIS Trustee seeking to recoup the very same kind of redemption payments at issue here. *See, e.g.*, *Cathay Life Ins.*, 2022 WL 16626325; *Lombard Odier I*, 2022 WL 2387523. This Court did so citing allegations of the same facts presented here: that the defendant "knowingly directed funds to be invested with New York-based BLMIS through Fairfield Sentry"; that Sentry "invested almost all of its assets in BLMIS"; that the defendant reviewed PPMs substantively identical to those at issue in *BLI*; that the defendant signed subscription agreements incorporating the same; and that the defendant communicated with FGG employees in New York. *Compare Cathay Life Ins.*, 2022 WL 16626325, at *3, *and Lombard Odier I*, 2022 WL 2387523, at *3, *with* Compl. ¶ 20 (alleging that BGL BNP invested in the Funds while knowing and intending that its investments would be passed along to BLMIS), *and* Spoliation Order (granting adverse inference that "any spoliated evidence would have been

15

favorable to the Liquidators in establishing personal jurisdiction over" BGL BNP). In light of these allegations, this Court held that defendants "intentionally directed its investment to New York-based BLMIS, through Fairfield Sentry," which in turn was a basis for exercising personal jurisdiction pursuant to *BLI*. *Lombard Odier I*, 2022 WL 2387523, at *3; *see also see also Lombard Odier II*, 2023 WL 395225, at *4 (denying appeal from *Lombard Odier I* and concluding that this Court's decision was based on proper application of "settled precedent").

Here, the Funds' offering documents (virtually identical to those at issue in *BLI*, *Cathay Life Insurance*, *Lombard Odier I*, and others), all demonstrate that BGL BNP, a sophisticated investor, invested more than $███████ dollars in Sentry and Sigma with the intention, knowledge, and expectation that its investments would be channeled into BLMIS. BGL BNP obtained pecuniary gains through these investments in the form of redemption payments. Under *BLI* and this Court's recent decisions, that defeats BGL BNP's Motion.

Specifically, as in *BLI*, PPMs for both Sentry and Sigma informed BGL BNP that it was making an indirect investment in New York-based BLMIS. The PPMs explained that:

1.   The Funds' objective ███████████████████████
     ███████████████████████████████████████
     ████████████████████████████████ Ex. 8 at -
     597. *cf.* Ex. 27 at -527 (████████████████████
     ████████████████████████████████ .

2.   Sentry was ████████████████████████████
     ███████████████████████████████████████
     ███████████████████████████ Ex. 8 at -598, 604
     ("████████████████████████████████████████").[17]

---

[17] Sigma PPMs would have ████████████████████
████████████████████████████████████████████
███████████████████ . *See, e.g.*, Ex. 27 at -528.



3.    BLMIS would ███████████████████████████████████
██████████████. *See* Ex. 8 at -603.

4.    Madoff would ███████████████████████████████████
█████████████████ *See* Ex. 8 at -597.[18]

BGL BNP affirmed that it ████████████████████████████████
████. *See* Exs. 2-5 ¶¶ 1-3, 7 (stating "████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████"); Exs. 6-7 (reaffirming "████████████
████████████████████████████████"); *see also BLI*, 480 B.R. at 517 ("BLI signed
the Subscription Agreement, which incorporated the PPMs.").

Pursuant to the adverse inference entered against BGL BNP, the Court can and should infer
that BGL BNP deleted or destroyed ESI that would have demonstrated further evidence of BGL
BNP's intention to invest in the United States through the Funds. For instance, the ESI that BGL
BNP destroyed (for example, from custodians in "risk management" roles) would likely have
included communications reflecting the investment strategy of Sentry and Sigma and their
relationship to BLMIS. *See, e.g.*, Ex. 8 (██████████████████████████████).
This Court has likewise recognized other instances where ESI can reflect that a party had
knowledge about the relationship between the Funds and BLMIS, demonstrating an intent to invest
in BLMIS via Funds. *See, e.g., Cathay Life Ins.*, 2022 WL 16626325, at *3 (citing to
correspondence seeking clarification that funds in Sentry would be transferred to BLMIS);
*Lombard Odier I*, 2022 WL 2387523 at *3 (citing to correspondence "with FGG employees
located in New York via mail and email"). For example, in *Picard v. Parson Finance Panama S.A.*

---

[18] The PPM in BLI conveyed the same information as those referenced above. See No. 11-ap-
02732, Dkt. 17-4 at 8-9, 14-16.

(*In re Bernard L. Madoff*) ("*Parson Finance*"), 2022 WL 3094092, at *4 (Bankr. S.D.N.Y. Aug. 3, 2022), this Court found that email correspondence supported purposeful availment of a defendant by reflecting defendant's intent "to invest with BLMIS through Fairfield Sentry … [and] purposeful[] avail[ment] of the privilege of doing business in New York." Because of BGL BNP's intentional spoliation, it should be presumed that, at a minimum, similar contacts would have been reflected in the record and would have demonstrated knowledge and intent to invest in BLMIS through the Funds. As was true of the *BLI* defendant, BGL BNP cannot escape jurisdiction for claims relating to an investment that it made while "[a]rmed with the fruits of [that] diligence." 480 B.R. at 517.[19]

BGL BNP's attempts to distinguish *BLI* fail.

*First*, BGL BNP attempts to avoid *BLI* on the basis that it involved an action brought by the BLMIS Trustee. *See* Mot. 13-14 (arguing that *BLI* applies only to "claims arising from the liquidation of BLMIS"). *BLI*, however, did not turn upon the degree of separation between the plaintiff and the defendant but, rather, on the defendant's *knowledge* that it was investing in BLMIS and its *intent* to profit from the U.S. securities market via that investment, which, the *BLI* defendant made by investing in Sentry, just like BGL BNP here. *See* 480 B.R. at 517.

---

[19] BGL BNP has asserted in prior briefing that it operated in an "execution only" capacity with respect to the Funds, Dkt. 164-2 at 4-5, but BGL BNP has not established as much, and in any event cannot evade responsibility on that ground. *First*, the Court has explicitly rejected this argument, since it weaponizes a lack of evidence which BGL BNP itself has destroyed, while running counter to the partial record of BGL BNP's activities. *See* Dkt. 168 at 52:4-53:10 ("[Counsel for BGL BNP]: The nature of these businesses, they're execution only … they weren't doing diligence on Fairfield. […] THE COURT: But you can't say there aren't any because some have already been produced from the other side"). *Second*, the Spoliation Order precludes BGL BNP from arguing that its communications "did not include diligence of the Funds, the Funds' investment strategy, and/or [BLMIS]," which BGL BNP has asserted is necessarily contrary to being "execution only." Spoliation Order ¶ 2; *see also* Dkt. 168 at 52:4-53:10 (arguing that the "execution only" role means that BGL BNP was not "doing diligence on Fairfield.").

*Second*, BGL BNP incorrectly asserts that the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014), bars jurisdiction here. Mot. 11-12. *Walden* does no such thing. The *Walden* Court held there was no jurisdiction because, unlike BGL BNP here, the defendant did not do anything to avail himself of the benefits and protections of the forum. In *Walden*, the defendant was a Georgia police officer who searched the plaintiffs and physically seized cash from them while they were passing through the state. The plaintiffs attempted to sue the officer in their home state of Nevada, arguing that jurisdiction existed on the basis that the officer knew the plaintiffs were Nevada residents. 571 U.S. at 288-91. The Supreme Court rejected that theory, stating that "the plaintiff cannot be *the only* link between the defendant and the forum," as "the defendant's conduct … must form the necessary connection with the forum State." *Id*. at 289 (emphasis added). In so concluding, the Court relied on the fact that the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id*. (emphasis added).

By contrast, the Liquidators do not argue (and *BLI* did not hold) that BGL BNP is subject to jurisdiction because of the Funds' own contacts with the United States, BGL BNP's knowledge of those contacts, or the mere foreseeability that the money it invested in the Funds would end up in the United States. Rather, as explained above, BGL BNP invested in in the Funds while knowing that the Funds would invest at least 95% of the money they received in U.S.-based BLMIS, *see* ▮▮▮▮▮▮, and with the *express aim* of having those investments placed in the U.S. to take advantage of the U.S. securities market—not that the Funds *might* "decide[] to make investments" in the United States. Mot. 13. Moreover, as explained below, BGL BNP ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮. That conduct is not attributable to the Funds, nor are the resulting contacts "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286 (quoting Burger

19

King Corp., 471 U.S. at 475). Rather, jurisdiction here, as in *BLI*, stems directly from BGL BNP's own deliberate actions aimed at the United States. *See Lombard Odier II*, 2023 WL 395225 (concluding that *Walden* does not foreclose jurisdiction in this context because "New York is not just where Defendant's money happened to end up"). Even after *Walden*, Sentry's mere involvement in facilitating some of those actions does not foreclose jurisdiction. *Id.*; *see also Walden*, 571 U.S. at 286 ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties.").[20]

*Third*, BGL BNP claims the Liquidators' argument depends on a disfavored stream of commerce theory. It does not. Per BGL BNP's own authority, the stream of commerce theory in the personal jurisdiction context refers to the notion that "a defendant's placing goods into the stream of commerce with the expectation that they will be purchased by consumers in the forum State may indicate purposeful availment." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881-82 (2011) (cleaned up). That is not the Liquidators' argument. Rather, the Liquidators argue that BGL BNP chose to invest in the Funds with the specific purpose of having its clients' money invested in U.S.-based BLMIS, and that it did so ███████████████████████████████████████████████████████████████████████████████████████████████████████. That satisfies the "purposeful availment" test and is not a stream of commerce argument.

---

[20] BGL BNP also wrongly suggests that Walden effectively overruled *BLI*. Mot. 13 n.11. This Court implicitly rejected this contention in *Lombard Odier I*, *Cathay Life Insurance*, and similar cases when it applied *BLI* (on which the plaintiff relied) to find jurisdiction based on the defendants' intentional investment in a Madoff feeder fund, *Lombard Odier I*, 2022 WL 2387523, at *4; *Cathay Life Ins.*, 2022 WL 16626325, at *3; *see also Lombard Odier II*, 2023 WL 395225 (endorsing this Court's application of *BLI* to nearly identical investments). *BLI* remains good law and supports the exercise of jurisdiction here.

### 2.    BGL BNP's Intentional Investment In The Funds Directly Relates To The Liquidators' Claims

BGL BNP's intentional investment in the Funds is directly related to the Liquidators' claims. To demonstrate a sufficient relationship between its claims and BGL BNP's forum contacts, the Liquidators need only show "an affiliation between the forum and the underlying controversy." *Cathay Life Ins.*, 2022 WL 16626325, at *4. That standard is satisfied here.

BGL BNP's investments in the Funds were, at their core, a means of investing in a U.S. entity to take advantage of the U.S. securities market. The sole purpose for subscribing for shares of the Funds was to ultimately redeem those shares; otherwise, the Funds would hold the money in perpetuity. Without the subscriptions BGL BNP would have had no shares to redeem and could not have received the redemption payments to which its subscriptions gave rise. The two are inextricably linked.

BGL BNP asserts that the Liquidators' claims "relate[] to and arise out of the calculation of the NAV," and, from this premise, BGL BNP somehow draws the conclusion that the Liquidators' claims are therefore wholly unrelated to BGL BNP's subscription in the Funds. Mot. 10. But BGL BNP cannot artificially decouple its subscriptions in the Funds from its redemptions. This Court previously rejected that argument in the Trustee actions when this Court held that "subsequent transfer claims … for monies [defendants] received from Fairfield Sentry … are directly related to [those defendants'] investment activities with Fairfield and BLMIS." *Lombard Odier I*, 2022 WL 2387523, at *4.[21]

---

[21] BGL BNP similarly argues that *Fairfield I* held the subscription agreements were wholly irrelevant to the exercise of personal jurisdiction. Mot. 10 (citing *In re Fairfield Sentry Ltd.* ("*Fairfield I*"), 2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018)). BGL BNP is flat wrong; *Fairfield I* held that, as a matter of contract interpretation, the New York forum selection clause in the subscription agreements did not amount to consent to jurisdiction in these actions. 2018 WL

BGL BNP cannot seek refuge by asserting that the Liquidators have not independently established jurisdiction over every individual subsequent transfer. The Court has already rejected this argument in a parallel proceeding brought by the BLMIS Trustee, where this Court held that "[b]y alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer…." *Id.* at *5. The Liquidators, just like the Trustee, alleged that BGL BNP intentionally invested in BLMIS and have therefore established jurisdiction as to each subsequent transfer.

**B.    BGL BNP Engaged In Other Business Activity In And Directed At The United States**

BGL BNP's additional U.S.-oriented business activity related to the Liquidators' claims also supports the exercise of jurisdiction here. Business contacts have long been considered a basis for the exercise of jurisdiction over a foreign defendant where that conduct is sufficiently related to the claims at issue. *See, e.g.*, *Burger King Corp.*, 471 U.S. at 475-76 (collecting cases). That is true even where the defendant conducted most or even all of this business while overseas, *see In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 (S.D.N.Y. 2020) (explaining that conduct that "occurs entirely out-of-forum" may support jurisdiction "if the defendant expressly aimed its conduct at the forum'" (quoting *Licci IV*, 732 F.3d at 173)), *rev'd in part on other grounds*, 61 F.4th 242 (2d Cir. 2023), and even where the conduct is carried out by the defendant's agent, *see In re Eur. Gov't Bonds Antitrust Litig.*, 2020 WL 4273811, at *6 (S.D.N.Y. July 23, 2020). BNP BGL has at least two categories of such contacts relevant here.

_____

3756343, at *10-12. The question of whether those agreements—or the defendants' subscription in the Funds more generally—could support jurisdiction on another basis was not before the court. *Fairfield I* is therefore inapposite as to this issue.

1.    **Evidence Indicates BGL BNP Engaged In Business Activity In And Directed At The United States**

The existing documentary record evidences business activities by BGL BNP in and directed at the United States in connection with its Fund investments. For instance, ███████ ████████████████████████████████████████████████████████████ ████████████████████████████. Exs. 2-4, ¶¶ 16, 19; Ex. 5 ¶¶ 17, 20; *see also* Compl. ¶¶ 23-24 (alleging that BGL BNP agreed to submit to the jurisdiction of New York courts in connection with proceedings related to Sentry and Sigma). Judge Bernstein previously held that those provisions, standing alone, did not amount to a consent to personal jurisdiction in this action. *Fairfield I*, 2018 WL 3756343, at *11.[22] But they nonetheless support the exercise of jurisdiction: "A choice of law clause is a significant factor in a personal jurisdiction analysis because the parties, by so choosing, invoke the benefits and protections of New York law" and signal a lack of objection to litigating at least some disputes in U.S. courts. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004); *see also In re Motors Liquidation Co.*, 565 B.R. 275, 288-89 (Bankr. S.D.N.Y. 2017) (holding that forum selection and choice of law clauses "support[ed] finding personal jurisdiction"); *Lombard Odier I*, 2022 WL 2387523, at *5 n.2 (same); *BLI*, 480 B.R. at 516, 517 n.15 (same). And the forum-selection and choice-of-law clauses directly relate to this case: they were contained in the subscription agreements that gave rise to the redemption payments at issue here.

---

[22] The Liquidators appealed that decision to the District Court, which affirmed, and the Liquidators are now appealing to the Second Circuit.

### 2. The Court Should Infer That More Extensive Evidence Of U.S. Business Activity Once Existed And Has Been Destroyed

This Court should also infer that BGL BNP destroyed evidence of additional business contacts with the United States. Courts have long recognized that ESI—such as emails and their attachments, word processing documents, spreadsheets, instant messages, or voicemails—are critical means by which businesses transact business, and as such can be sufficient to establish jurisdiction if aimed at the forum. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 30 (2d Cir. 1996) (questioning "whether, in an age of e-mail and teleconferencing, the absence of actual personal visits to the forum is any longer of critical consequence"); *Ralph Lauren Corp. v. CSR Grp., Inc.*, 2016 WL 4919961, at *3 (S.D.N.Y. Sept. 14, 2016) (finding New York long-arm statute satisfied based on regular emails and telephone calls to New York). As this Court has likewise recognized, emails can demonstrate activities in or directed at the U.S. that directly bear on jurisdiction in actions similar to this. For instance, this Court has cited as favorable in establishing jurisdiction ESI reflecting, among other things: a party's regular communications with entities in the U.S., such as FGG, *see Picard v. LGT Bank in Liechtenstein Ltd. (In re Madoff*), 2023 WL 2003960, at *3 (Bankr. S.D.N.Y. Feb. 14, 2023); travel to, and meetings between a party and entities in, New York, including FGG and Madoff, *see Picard v. ASB Bank Corp. (In re Madoff*), 2022 WL 17087667, at *3 (Bankr. S.D.N.Y. Nov. 18, 2022); and detailed discussions of diligence concerning Fairfield and BLMIS, *see LGT Bank*, 2023 WL 2003960, at *3. The Liquidators have established that BGL BNP destroyed ESI from the custodians most likely to have this sort of evidence, such as individuals whose job it was to develop relationships and manage risk. Thus, consistent with the adverse inference in the Spoliation Order, the Court should presume BGL BNP engaged, at a minimum, in such activities—just like other defendants in related BLMIS

actions. *See* Spoliation Order ¶ 3 (providing that "any spoliated evidence would have been favorable to the Liquidators in establishing personal jurisdiction over Defendant").

Alongside the contacts demonstrated by evidence obtained from third parties—such as PPMs reflecting BGL BNP's intentional investment in BLMIS feeder funds, and ███████████

████████████████████ (discussed in Sections I.A, *supra*, and I.C, *infra*, respectively)—ESI that would exist but for BGL BNP's intentional spoliation supports this Court's exercise of personal jurisdiction over BGL BNP. And each of these contacts plainly relate to the Liquidators' claims. For instance, BGL BNP's presumptive due-diligence-related activity would have contributed to its knowledge that the NAVs were inaccurate—a core element of the Liquidators' constructive trust claims. *In re Fairfield Sentry Ltd.* ("*Fairfield II*"), 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018). That is more than sufficient to conclude that the above contacts relate to the Liquidators' claims and therefore support the exercise of jurisdiction. *See Cathay Life Ins.*, 2022 WL 16626325, at *4.

**C.    BGL BNP** ███████████████████ **To Invest In And Receive Redemption Payments From Sentry**

BGL BNP's ████████████████████████████████

████████████████████████████████ independently supports the exercise of jurisdiction with respect to those redemption payments. A defendant's ██

████████████████████████████████

████████████████████████████████

25

■■■. *Licci IV*, 732 F.3d at 171-73. BGL BNP's ■■■■■■■■ use satisfies each of

those three prongs.[23]

      **1.**    **BGL BNP Deliberately** ■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■. A defendant's correspondent

account use is "deliberate" if it "indicates desirability and a lack of coincidence." *Licci IV*, 732

F.3d at 168 (quoting *Licci III*, 984 N.E.2d at 901). ■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■. *See, e.g.*, *Picard v. Meritz

Fire & Marine Ins. Co. Ltd.* (*In re Bernard L. Madoff*), 2022 WL 3273044, at *3 (Bankr. S.D.N.Y.

Aug. 10, 2022) ("Where a defendant chooses to use a United States bank account to receive funds,

exercising personal jurisdiction over the defendant for causes of action relating to those transfers

is constitutional."); *Cathay Life Ins.*, 2022 WL 16626325, at *3; *Licci IV*, 732 F.3d at 170-71.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■. ■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■. *See, e.g.*, Exs. 28-30 (■■■■■■■

■■■■■■■■■■■). ■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■. Exs. 2-5

(Subscription Agreements ■■■■■■■■■■■■■■■); Ex. 32

(email  from ■■■■■■■■■■■■■■■■■■■■

_____

[23] While BGL BNP did not ■■■■■■■■■■■■■■■■
■■■, it is still subject to jurisdiction with respect to those transactions, as the Liquidators'
jurisdictional theories detailed in Sections I.A and I.B, *supra*, do not turn on correspondent account
use.



). BGL BNP had complete control over ██████████████████. *See* Joyce Decl. at 11-13 (concluding that Fairfield Sentry investors could have used foreign, U.S. dollar denominated correspondent accounts to send and receive subscription and redemption payments, respectively, without employing correspondent banking services in the U.S.). █████████████████████ ████████████████████████, *solely because* BGL BNP made the choice to ████████████████████████████████.

In addition ████████████████████, BGL BNP also ████████████ ██████████████████████████. Courts have held that a defendant's transfer of monies to a third-party's U.S. account can support the exercise of jurisdiction. *See Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank* ("*Arcapita I*"), 549 B.R. 56, 68-69, 70 n.18 (S.D.N.Y. 2016). Sentry's PPM made clear that any ███████████████████████████. Ex. 8 at -602. BGL BNP thus knew at the time of its investments in Sentry that ████████████ █████████████████████. BGL BNP nonetheless *chose* Sentry rather than investing in a different fund that lacked such a requirement. BGL BNP's ██ █████████████████████[24]—it was a direct consequence of its choice to invest in Sentry, fully aware that investing in Sentry would ███████████████████ █████████████████.

---

[24] To the extent that there is any doubt as to the intentionality of BGL BNP's use of correspondent account use, the Court should likewise presume that ESI would have conclusively demonstrated that this use was intentional. *See* Spoliation Order. Here, third-party discovery demonstrates ████████████████████████████, *see* Ex. 32 (█████████████████████), and the Court should presume that further, similar conversations would exist but for BGL BNP's spoliation.

BGL BNP's attempts to minimize the significance of its use of U.S. accounts fail.

*First*, contrary to BGL BNP's suggestion that it had no choice but to use a U.S. account, Mot. 17-18, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. *See* Joyce Decl. at 11-13. BGL BNP nevertheless *chose* to ██████████████████████████

████████████████████████████████.

Also, contrary to BGL BNP's suggestion, *see* Mot. 18, BGL BNP was not required to use a U.S. correspondent account simply because Sentry designated U.S. dollars as its base currency. *See* Joyce Decl. at 11-13. ███████████████████████████████████████

██████████████████████████████████. *See* Ex. 2 ¶ 9; Ex. 33 (Sentry Articles of Association) at 8-11 (requiring only that "payment shall be made to the Applicant in the Base Currency in respect of the redemption or purchase of Shares" by way of "cheque, draft, wire transfer or other means of payment posted"). Further, the Second Circuit has recognized that, "[i]n light of the widespread acceptance and availability of U.S. currency, [a foreign bank] could have … processed U.S.-dollar-denominated wire transfers … through correspondent accounts anywhere in the world." *Licci IV*, 732 F.3d at 171.

In any event, even assuming *arguendo* that Sentry being a U.S. dollar-based fund somehow "necessitated" the use of a U.S. account (it did not), BGL BNP would have been well aware of that fact when it chose to invest in Sentry, as opposed to some other fund. BGL BNP thus still voluntarily and purposefully █████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████, even under BGL BNP's framing of the facts.

28

BGL BNP's reliance on *Arcapita I* to suggest otherwise is misplaced. Mot. 17-18. *Arcapita I* found jurisdiction over a foreign bank's receipt of a single transfer via a third-party's correspondent account. 549 B.R. at 68-69. In dicta, the court suggested that it may have reached a different outcome if the defendant itself had not selected U.S. dollars as the currency for the transaction. *Id.* at 71. But that same court recently clarified that it could exercise personal jurisdiction over the foreign bank even if the transferee, not the defendant, "wanted to [transact] in U.S. dollars" because the defendant "*chose to accept those terms* and then *designated correspondent bank accounts in New York* to receive the fund transfers." *In re Arcapita Bank B.S.C.(C)* ("*Arcapita II*"), 2022 WL 1620307, at *6 (S.D.N.Y. May 23, 2022) (emphasis added).

*Second*, BGL BNP mischaracterizes its receipt of redemption payments as "passive receipt of money." Mot. 14. But, as noted above, BGL BNP's redemption payments were wired to its U.S. account █████████████████████████████████████████████████████████ █████████.[25]

*Third*, BGL BNP incorrectly asserts its use of correspondent accounts was "entirely incidental" to the "claims about a breach by Citco Fund Services" and to the "principal wrong alleged," as in *Hill v. HSBC Bank PLC*, 207 F. Supp. 3d 333 (S.D.N.Y. 2016), and *Hau Yin To v.*

---

[25] It is irrelevant whether BGL BNP can demonstrate that it executed these transactions solely on behalf of its clients (which it has not done). *See Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 326-27 (2016) ("Repeated, deliberate use that is approved by the foreign bank on behalf and for the benefit of a customer … demonstrates volitional activity constituting [purposeful availment]"); *Licci IV*, 732 F.3d at 171 (exercising jurisdiction based on a defendant's intentional use of a U.S. account on behalf of a client). An agent avails itself of a particular country's banking system when it chooses "where to receive the funds to make [the transactions]" on behalf of its principal—conduct "properly attributable to the [agent]." *Arcapita I*, 549 B.R. at 70 n.17 (S.D.N.Y. 2016). Nowhere in its Motion does BGL BNP suggest that its clients requested it to process payments relating to their investments in the Funds through a U.S. correspondent account. Hence, it was BGL BNP's choice to ██████████, and BGL BNP is subject to jurisdiction as a result.

*HSBC Holdings PLC*, 2017 WL 816136 (S.D.N.Y. Mar. 1, 2017). Mot. 18-19. But the truth is the exact opposite. To begin with, the wire transfers here are at the core of the Liquidators' claim because, in order to recover the inflated redemption payments from BGL BNP, the Liquidators must show that BGL BNP received them. *Fairfield II*, 596 B.R. at 301. Moreover, in *Licci IV*, the Second Circuit held that the defendant's "selection and repeated use of New York's banking system as *an instrument for accomplishing the alleged wrongs* for which the plaintiff seeks redress, constitutes purposeful availment of the privilege of doing business in New York." 732 F.3d at 171 (emphasis added). Here, BGL BNP likewise █████████████████████████████ ███████████████████████████████████: the Liquidators seek to claw back from BGL BNP the very redemption payments that BGL BNP *obtained as an investor using New York banks* to buy and redeem the shares. By contrast, the defendants in *Hill* and *Hau Yin To* were not investors in any feeder funds, and the plaintiffs were not seeking to claw back redemption payments received by the defendants.[26]

*Finally*, BGL BNP argues that the "[u]se of a correspondent account by a foreign bank to clear transfers for a foreign contract denominated in U.S. dollars does not, as a matter of law, confer jurisdiction over the foreign bank." Mot. 16. But the only case BGL BNP cites for that proposition aside from *Hill* and *Hau Yin To—Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010)—is inapposite. The defendant there was *not even alleged to have transferred any money* to the United States. *Tamam* simply recognized that allegations that the defendant

---

[26] Moreover, the core conduct targeted by the Liquidators' claims—BGL BNP investing in and receiving redemption payments from the Funds—was (at least with respect to Sentry) █████████████████████████████████████████. That conduct cannot be fairly characterized as "incidental" to the Liquidators' claims seeking to recoup those same redemption payments. *See Incidental*, Black's Law Dictionary (11th ed. 2019) (defining "incidental" as a "minor role" in carrying out "something of greater importance").

maintained U.S. accounts were not enough absent "allegations … [of] the actual transfer of money through New York." *Id*. The Liquidators have never argued that BGL BNP should be subject to the Court's jurisdiction simply because it *maintained* an unused U.S. correspondent account. Instead, BGL BNP is subject to the Court's personal jurisdiction because ███████████████ ██████████████████████████████ As explained above, such use is sufficient to establish jurisdiction.



**2.    BGL BNP** ████████████████████████████

BGL BNP frequently ████████████████████████████████. "[A] foreign bank's *repeated use* of a correspondent account in New York … show[s] purposeful availment of New York's" banking, currency, and legal systems. *Licci IV*, 732 F.3d at 168 (quoting *Licci III*, 984 N.E. 2d at 900) (emphasis added).

BGL BNP ████████████████████████████████████ ██████████████████████████ from Sentry. *First*, BGL BNP sent ████████ ████████████████████████████████████████ ██████████████████. *See, e.g.*, Exs. 28-30 (subscription wire records). *Second*, BGL BNP ████████████████████████ ████████████████. BGL BNP ████████████████████ ████████████████████████████. Compl. ¶ 45 & Ex. A; *see, e.g.*, Exs. 10-11, 22, 31. In total, BGL BNP processed ████████████ ████████████████████████████████.

With respect to both the volume of transfers and the total sum of money involved, BGL BNP's correspondent account use exceeds what courts have found sufficient in other cases. For instance, in *Schansman v. Sberbank of Russia PJSC*, 2021 WL 4482172, at *5 (S.D.N.Y. Sept. 30,

31

2021), the district court exercised personal jurisdiction based on two transfers for a combined $300, where the plaintiff alleged more generally that "some of" the millions of dollars had been routed through U.S. accounts. Similarly, in *Arcapita I*, 549 B.R. 56, 70 & n.18 (S.D.N.Y. 2016), the court held that even a single use of a third party's correspondent account use was sufficient.[27] *A fortiori*, BGL BNP's ███████████████████████████████████████████████ ████████████████████████████████████████████ is sufficiently "recurring" to confer personal jurisdiction over BGL BNP.

BGL BNP is also wrong that exercising personal jurisdiction here would open the floodgate of "any foreign commercial dispute" being haled into New York courts. Mot. 16-17. BGL BNP is not akin to a defendant that had one USD transaction pass through an account located in New York, unbeknownst to itself. *Id.* ████████████████████████████████████ ███████████████████████████████████████████████████████ ██████████ in order to obtain the benefits of the U.S. securities markets. No expansion of the Second Circuit's personal jurisdiction doctrine is necessary to hold that BGL BNP falls firmly within this Court's jurisdiction with respect to its Sentry redemptions.[28] *See, e.g.*, *Licci IV*, 732 F.3d at 171.

---

[27] *Arcapita I* and *Schansman* thus make clear that cases finding jurisdiction where additional transfers were at issue, *see, e.g.*, *Licci IV*, 732 F.3d at 170-71; *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *5 (S.D.N.Y. Jan. 21, 2020), *R. & R. adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020), apply to this case with equal force.

[28] BGL BNP's reliance on *Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co.*, 12 N.E.3d 456, 459-60 (N.Y. 2014), and *Universal Trading & Inv. Co., Inc. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. 2012), Mot. 16-17, is misplaced. *Mashreaqbank* simply clarified that under New York precedent, the passage of funds through New York banks did not itself preclude dismissal on a *forum non conveniens* ground. 12 N.E.3d at 450-60. There was no discussion of the significance of such a transaction in a minimum contacts inquiry. And in *Universal Trading*, a foreign defendant requested a wire transfer from her account at a bank in Ukraine to the recipient's account in Antigua. *Universal Trading*, 2012 WL 6186471, at *3. The Ukrainian bank, unbeknownst to the defendant, processed this transfer through several correspondent accounts,

**3.    BGL BNP's ███████████████ Was Sufficiently Related To The Harms Alleged**

BGL BNP's ████████████ is sufficiently related to the Liquidators' claims seeking to recover Sentry redemption payments. Where a defendant's use of a U.S. account is "*an instrument for accomplishing the alleged wrongs* for which the plaintiff seeks redress," it is sufficiently related to the claims at issue. *Licci IV*, 732 F.3d at 171; *see also FGG*, 627 B.R. at 566 *see also FGG*, 627 B.R. at 566 ("[T]he 'arising out of' prong] may be satisfied when defendant's allegedly culpable conduct involves at least in part financial transactions that touch the forum.").

As discussed above, a core element of the Liquidators claims is that BGL BNP received inflated redemption payments. And, as also discussed above, BGL BNP accomplished the wrongs for which the Liquidators seek redress ███████████████████████████████ ████████████████████ for those shares that the Liquidators seek to claw back. That is enough to establish jurisdiction over BGL BNP with respect to the redemption payments at issue. See *Licci IV*, 732 F.3d at 171; *Picard v. BNP Paribas S.A. (In re Bernard L. Madoff),* 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the claims for redemption payments the defendants received as investors in a BLMIS feeder fund arose from the defendant's wiring of funds in U.S. dollars to New York and receipt of redemption payments from a New York correspondent account).

**D.    The Court May Exercise Jurisdiction Over BGL BNP Even If The Transfers Are Deemed Foreign For Purposes Of The Bankruptcy Safe Harbor Analysis**

BGL BNP attempts to make much ado about nothing by insisting that the Liquidators have previously conceded "[t]he redemption transfers at issue here were purely foreign" and that "every

---

including one in New York, which the court found was insufficient for the exercise of personal jurisdiction without more. *Id.* But unlike in *Universal Trading*, BGL BNP's account use ██████ ████████████████████

*relevant* component of the transactions at issue here occurred outside the [U.S.]" Mot. 2 (emphasis added) (quoting Pls.'-Appellants' Opening Br. for Second-Round Appeal at 24, *Fairfield Sentry Ltd. v. Citibank NA London*, No. 19-cv-3911, Dkt. 440 (S.D.N.Y. July 21, 2021) ("Pls.' Opening Br.")); *see also id.* at 10 ("There is no dispute that every element of the transaction is 'purely foreign.'" (quoting Pls.' Opening Br. at 24)). BGL BNP is quoting the Liquidators' appellate brief out of context and ignoring black-letter law holding that "[t]he tests for personal jurisdiction and extraterritoriality are not the same." *In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 n.14 (Bankr. S.D.N.Y. 2017); *see also Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012) (distinguishing the two tests).

For this reason, the set of facts relevant to the personal jurisdiction inquiry is different from the set of facts relevant to the extraterritoriality inquiry. *Compare RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016) (explaining that the extraterritoriality inquiry focuses on "conduct relevant to the statute's focus"), *with Licci IV*, 732 F.3d at 170 (holding that the specific personal jurisdiction inquiry focuses on the "totality" of the defendant's forum contacts that give rise or relate to the plaintiff's claim). In this action, "the focus [of the extraterritoriality] analysis is the location of the transfer" itself. *Picard v. Bureau of Lab. Ins.*, 2016 WL 6900689, at *19 (Bankr. S.D.N.Y. Nov. 22, 2016), *vacated and remanded on other grounds sub nom. In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85. By contrast, the personal jurisdiction inquiry addresses a much broader set of facts, *see supra* Sections I.A-I.C, including, as relevant here, BGL BNP's knowledge and intent in making the investment that gave rise to the transfers at issue, *see BLI*, 480 B.R. at 517; BGL BNP's communications with individuals in the forum in connection with that investment, *see Cathay Life Ins.*, 2022 WL 16626325, at *3; forum selection clauses in the contracts governing that investment, *see Sunward Elecs.*, 362 F.3d at 23; and BGL

34

BNP's deliberate and frequent ███████████████████████████████████

███████████, *see Licci IV*, 732 F.3d at 168-71.[29]

The Liquidators referred to the redemption transfers as "purely foreign" because under applicable law the only "*relevant component[s]*" of the redemption transfers for purposes of the extraterritoriality analysis were in fact foreign, Pls.' Opening Br. at 24 (emphasis added), not because it "served their purposes," Mot. 2. The Liquidators' characterization of the transfers as foreign for purposes of extraterritoriality has no bearing on this motion.[30]

## II.    The Exercise Of Jurisdiction Over BGL BNP Is Reasonable

Exercising specific jurisdiction over BGL BNP—which deliberately chose to invest in and profit from the U.S. securities market and repeatedly used the U.S. banking system to do so—is "reasonable under the circumstances" presented here. *U.S. Bank Nat'l Ass'n*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1786). Because the Liquidators have made "a threshold showing of minimum contacts," the burden is on BGL BNP to "present[] 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life Ins.*, 84 F.3d at 568 (quoting *Burger King. Corp.*, 471 U.S. at 477). BGL BNP has not done so.

---

[29] The redemption transfers from Sentry are relevant to both inquiries given BGL BNP's ████████
██████. The Liquidators' prior extraterritoriality argument that those transfers are "foreign" was premised on well-settled law holding that use of a U.S. correspondent account does not render otherwise foreign transfers domestic for extraterritoriality purposes. *See* Pls' Opening Br. at 68-70, *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, 10-ap-03496, Dkt. 1336 (citing *Bureau of Lab. Ins.*, 2016 WL 6900689, at *20); *see also In re Madoff Sec.*, 513 B.R. 222, 228 n.1 (S.D.N.Y. 2014); *Loginovskaya v. Batrachenko*, 764 F.3d 266, 268-69 (2d Cir. 2014). That is not so for personal jurisdiction. *See, e.g., Licci IV*, 732 F.3d at 168-71.

[30] For years, the Liquidators have consistently made these extraterritoriality and personal jurisdiction arguments in tandem, pointing out that transfers that are "foreign" for purposes of extraterritoriality may still support personal jurisdiction. *See* Pls.' Opening Br. at 68-69.

To assess reasonableness, courts consider: "(1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the 'interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and (5) 'the shared interests of the several States in furthering fundamental substantive social policies.'" *U.S. Bank Nat'l Ass'n*, 916 F.3d at 151 n.5 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987)). "The primary concern is the burden on the defendant," *id.* (cleaned up), and dismissals on reasonableness grounds "should be few and far between." *Cunningham v. Gen. Motors LLC*, 2021 WL 827124, at *2 (S.D.N.Y. Mar. 4, 2021) (cleaned up) (quoting *Metro. Life Ins. Co.*, 84 F.3d at 575). These factors strongly support the exercise of jurisdiction in this case.

In an effort to characterize the exercise of jurisdiction as unreasonable, BGL BNP argues that: (1) the United States's interest in this dispute is "minimal at best"; (2) BGL BNP would face "substantial burdens" litigating here because discovery "would potentially expose" it to "civil and criminal liability"; and (3) the Liquidators have not demonstrated that it is "more reasonable" to litigate here than elsewhere. Mot 21-23. These arguments are meritless.

*First*, contrary to BGL BNP's assertion, the United States clearly has a substantial interest in this action. Courts have recognized that the United States has a strong interest in ensuring that its financial system is not used for unlawful purposes. *See, e.g.*, *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 31 (E.D.N.Y. 2016) ("[T]he Court also may take into account 'the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used' [for unlawful purposes]" (quoting *Licci IV*, 732 F.3d at 174)). At its core, the case is about BGL BNP's decision to indirectly invest in and reap profits from BLMIS and the U.S. securities market through Madoff feeder funds. Allowing foreign investors like BGL BNP to evade U.S. jurisdiction in these circumstances, simply because they chose to invest through a foreign-based

conduit as part of their scheme, would ignore the reality of the transactions, allowing those investors to reap all the benefits of the U.S. securities market without any of the corresponding obligations. That result would be all the more perverse where, as here, BGL BNP deliberately and repeatedly ████████████████████████████████████████, *see supra* Section I.C, and where the Court can infer that deleted evidence would have reflected those goals. *See* Spoliation Order.

BGL BNP argues that the United States's interests are minimal because subject matter jurisdiction would not exist over the Liquidators' "non-core" claim but for the Chapter 15 recognition of the Liquidators' foreign liquidation proceedings. Mot. 22. That counterfactual argument is a red herring. This Court has already found that it has subject matter jurisdiction and should find now that the United States has an interest in this dispute.

*Second*, BGL BNP has no legally cognizable burden here. As in *Lombard Odier I*, BGL BNP "has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel ████████████████████████████████████████████████ ██████████████████████████████████ 2022 WL 2387523, at *5. In *Lombard Odier I*, this Court held that, as here, the forum selection clauses in the subscription agreements "could not be used as the sole basis for this Court's exercise of jurisdiction." *Id.* at *5 n.3. Still, "the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable." *Id.*

BGL BNP argues that engaging in document discovery about redemption payments in the United States "would *potentially* expose" it "to civil and criminal liability" under foreign law. Mot. 22 (emphasis added). But the parties have successfully negotiated a redaction protocol that allows BGL BNP to comply with its obligations under the Federal Rules without violating foreign

law. Critically, BGL BNP has already substantially completed its production of documents for purposes of jurisdictional discovery, directly contradicting its argument. Finally, this Court's has found that BGL BNP intentionally spoliated discovery. Spoliation Order. BGL BNP's own actions leave only a limited documentary record available for discovery and undermine its purported concern.

Even if BGL BNP had legitimate discovery concerns, they have no place "in the context of assessing the reasonableness of an exercise of personal jurisdiction." *Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 333 (S.D.N.Y. 2018) (cleaned up), *aff'd*, 349 F. Supp. 3d 346 (S.D.N.Y. 2018); *see Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 99 (S.D.N.Y. 2015) (noting "no other courts" considered this type of foreign law argument, and "declin[ing] to be the first").[31] BGL BNP does not cite any case in which a court declined to exercise personal jurisdiction because some aspect of discovery theoretically might "potentially" violate foreign law, at some future indeterminate point.

*Third*, BGL BNP's assertion that the Liquidators "have not demonstrated that it is *more* reasonable for them to litigate their claims against BGL BNP in New York rather than in the BVI … or in Luxembourg," Mot. 22 (emphasis added), is flatly inconsistent with personal jurisdiction law. BGL BNP does provide any legal support for the proposition that the existence of an alternate forum has any bearing on personal jurisdiction or renders the exercise of jurisdiction

---

[31] Perhaps in recognition that modern technology and travel ease any additional burden BGL BNP might face due to its status as a foreign defendant, BGL BNP's discovery argument is its sole burden argument. *See, e.g., Licci*, 732 F.3d at 174 ("[T]he conveniences of modern communication and transportation ease any burden … impose[d] on [the defendant]." (cleaned up)).

in the United States unreasonable.[32] A different jurisdiction's concurrent ability to hear claims has

no bearing on whether it is *un*reasonable for a U.S. court to likewise do so. In addition, this Court

hears other cases about the very same Ponzi scheme (including against this very entity, *see Picard

v. BNP Paribas S.A. (In re Bernard L. Madoff)*, 12-ap-01576 (CGM) (Bankr. SDNY)). It is

reasonable for this case, involving the same scheme and same organization, to be litigated in the

same Court.

　　*Finally*, BGL BNP's characterization of the Liquidators' selection of this forum as

"maneuvering," Mot. 22-23, is baseless and is contradicted by the chronology of this case. Over

200 suits were pending in this Court before any substantive decision was issued by any BVI court,

and it was the *defendants* in the BVI action that pushed that litigation into the preliminary issues

process and thereafter cited that process as support for a stay of the U.S. litigation (over the

Liquidators' objections). *See Fairfield Sentry Ltd. (In Liquidation) v. Theodoor GGC Amsterdam*,

No. 10-ap-03496 (Bankr. S.D.N.Y.), Dkt. 925 (Hare Decl. dated Oct. 21, 2016); *id.* Dkt. 1407

(Molton Decl. dated April 6, 2017); *id.* Dkt. 1406 (Liquidators' Br. dated April 6, 2017) at 17-19.

　　Moreover, BGL BNP cites dicta from a single case, *Ford Motor Co. v. Montana Eighth

Judicial District Court*, 141 S. Ct. 1017, 1031 (2021), in which the Supreme Court distinguished

its ruling in another personal jurisdiction case, *Bristol-Myers Squibb*, 137 S. Ct. 1773, where the

plaintiffs had engaged in forum shopping. In *Ford*, the Supreme Court upheld the exercise of

personal jurisdiction on the ground that "the connection between plaintiffs' claims and

---

[32] BGL BNP's argument sounds vaguely like a *forum non conveniens* argument, but it did not
move to dismiss on those grounds. Even if such a motion were before the Court (it is not), the
Court would "begin with the assumption that the plaintiff's choice of forum will stand unless the
defendant meets the burden of demonstrating" otherwise. *Iragorri v. United Techs. Corp.*, 274
F.3d 65, 71 (2d Cir. 2001). "The plaintiff's choice of forum should rarely be disturbed" "[u]nless
the balance is strongly in favor of the defendant." *Id.* at 70 (quoting *Gulf Oil Corp. v. Gilbert*, 330
U.S. 501, 508, (1947)), which it is not here.

[defendant's] activities" in the forum states was "close enough." *Id.* at 1032. In *Bristol-Myers Squibb*, the Supreme Court found a lack of personal jurisdiction when non-California plaintiffs sued Bristol-Myers in California over a drug that Bristol-Myers sold nationwide. 137 S. Ct. at 1778-79. In *Ford*, the Court explained that the *Bristol-Myers* result turned on the complete lack of *plaintiffs'* contacts with California: they had neither purchased nor ingested the drug in California, nor had they been injured there. 141 S. Ct. at 1031-32. Here, BGL BNP's intent to invest in BLMIS via the Funds, its ████████████████, and its additional contacts with the United States (including those the Court can infer once existed) are closely connected to the Liquidators' claims, as explained above. *Ford* therefore supports the exercise of jurisdiction here, and *Bristol-Myers Squibb* is wholly inapplicable.

BGL BNP has failed to establish that the exercise of jurisdiction is unreasonable.[33]

## CONCLUSION

For the reasons discussed above, this Court should deny BGL BNP's motion.

Date: April 28, 2022                    Respectfully submitted,

                                        SELENDY GAY ELSBERG PLLC

                                        */s/  David Elsberg*
                                        David Elsberg
                                        Maria Ginzburg
                                        Jordan Goldstein
                                        Lena Konanova
                                        David S. Flugman
                                        Joshua S. Margolin

---

[33] BGL BNP cites out-of-circuit cases for the proposition that defendants should be dismissed where their contacts "only 'barely satisfy the minimum contacts standard" and "a majority of the reasonableness factors weigh against the exercise of jurisdiction." Mot. 23-24. But cases in which the reasonableness analysis warrants dismissal despite a showing of sufficient minimum contacts are "few and far between." *Cunningham*, 2021 WL 827124 at *2. In any event, this is not such a case. Here, the minimum contacts standard is squarely satisfied. And BGL BNP has not shown that a majority of the reasonableness factors weigh in its favor, so rendering its cited authority inapplicable.

1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-390-9000
delsberg@selendygay.com
mginzburg@selendygay.com
jgoldstein@selendygay.com
lkonanova@selendygay.com
dflugman@selendygay.com
jmargolin@selendygay.com

-and-

BROWN RUDNICK LLP
David J. Molton
Marek P. Krzyzowski
Seven Times Square
New York, NY 10036
Telephone: 212-209-4800
dmolton@brownrudnick.com
mkrzyzowski@brownrudnick.com

*Attorneys for the Plaintiffs Joint Liquidators*